PC

FILED
JUL 16 2001
Phil Lombardi, Clerk
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OKLAHOMA

OSAGE NATION,

Plaintiff,

vs.

STATE OF OKLAHOMA ex rel.
OKLAHOMA TAX COMMISSION,

Defendant.

Case No. 01CV0516B (M)

COMPLAINT

For its claim for declaratory and injunctive relief against Defendant State of Oklahoma, Plaintiff Osage Nation ("Nation") alleges and states as follows:

JURISDICTION AND VENUE

1. The Nation invokes the jurisdiction of this Court pursuant to 28 U.S.C. §1331 and §1362, in that this action arises under 18 U.S.C. §1151, the treaties between the Nation and the Government of the United States of America ("United States"), the Act of May 2, 1890, Ch. 182, §1, 26 Stat. 81 (1890), the Act of June 16, 1906, Ch. 3335, 34 Stat. 267 (1906), the Act of June 28, 1906, Ch. 3572, 34 Stat. 539 (1906), and the federal common law relating to Indians.

2. Venue is proper in the Northern District of Oklahoma in that the Indian country of the Nation is located in the Northern District of Oklahoma and the actions of Defendant complained of herein have occurred and are occurring in the Northern District of Oklahoma.

CLAIM FOR RELIEF

3. The Nation is a Federally recognized Indian tribe with a governing body duly recognized by the Secretary of the United States Department of the Interior.

Sums fees pd 95 517

4. The Oklahoma Tax Commission ("Commission") is an agency of Defendant authorized by Defendant to administer and enforce the tax laws enacted by Defendant.

5. Pursuant to the Treaty of July 19, 1866, 14 Stat. 799 (1866), the United States purchased from the Cherokee Tribe certain lands in the Indian Territory for the purpose of settling friendly Indians thereon. Such lands included those lands lying between the Arkansas River and the Kansas state line, which lands are now sometimes referred to as Osage County, Oklahoma.

6. In 1867, the United States entered into a treaty with the Nation whereby the Nation conveyed its rights to lands in the State of Kansas for reservation lands in the Indian Territory, said reservation lands being those lands now sometimes referred to as Osage County, Oklahoma. Pursuant to this treaty, the Nation removed to its reservation lands in the Indian Territory.

7. In the Act of June 16, 1906, Ch. 3335, 34 Stat. 267 (1906) ("An Act to enable the people of Oklahoma and of the Indian Territory to form a constitution and State government and be admitted into the Union"), Congress authorized the inhabitants of Oklahoma Territory and the Indian Territory to adopt a constitution and become the State of Oklahoma. Included in said act was the following provision:

> "Provided, that nothing contained in the said constitution shall be construed to limit or impair the rights of person or property pertaining to the Indians of said Territories (so long as such rights shall remain unextinguished) or to limit or affect the authority of the Government of the United States to make any law or regulation respecting such Indians, their lands, property or other rights by treaties, agreement, law or otherwise, which it would have been competent to make if this Act had never been passed."

Although the Nation's reservation was included within the geographical boundaries for the State of Oklahoma, nothing in said act provided for the extinguishment or diminishment of the Nation's reservation.

8. In the Act of June 28, 1906, Ch. 3572, 34 Stat. 539 (1906) ("An Act for the division of the lands and funds of the Osage Indians"), Congress authorized the division and distribution of almost all the lands comprising the Nation's reservation to its members. Nothing in said act provided for the extinguishment or diminishment of the Nation's reservation.

9. That since the adoption and enactment of the Act of June 28, 1906, Congress has enacted no law and taken no action explicitly intending to extinguish or diminish the Nation's reservation.

10. Under Federal law, only Congress can alter the terms of an agreement or treaty with an Indian tribe to extinguish or diminish a tribal reservation and Congress' intent to do so must be clear and plain. See, Solem v. Bartlett, 465 U.S. 463, 470, 104 S. Ct. 1161, 1166, 79 L.Ed.2d 443 (1984); South Dakota v. Yankton Sioux Tribe, 522 U.S. 329, 343, 118 S.Ct. 759, 798, 139 L.Ed.2d 773 (1998).

11. Under Federal law, the term "Indian country" includes formal and informal reservations, dependent Indian communities and Indian allotments, whether restricted or held in trust by the United States. See 18 U.S.C. §1151; Oklahoma Tax Commission v. Chickasaw Nation, 515 U.S. 450, 453, 115 S.Ct. 2214, 2217, 132 L.Ed.2d 400 (1995).

12. Under Federal law, tribal members who work for the tribe and reside in Indian country are exempt from paying state income taxes on the wages earned from their tribal employment. See McClanahan v. State Tax Commission of Arizona, 411 U.S. 164, 165, 93 S.Ct. 1257, 1259, 36 L.Ed.2d 129 (1973); Chickasaw Nation, supra.

13. In regards to the Nation and its members, Indian country includes all lands within the Nation's reservation boundaries (i.e., all lands comprising Osage County, Oklahoma).

14. The Commission has and currently asserts that the Nation's members who are employed by the Nation and reside within the Nation's reservation but whose residences are not on lands held in trust by the United States are subject and required to pay Oklahoma state income taxes and is attempting to levy and collect said taxes. See Exhibit "A" hereto. On information and belief, it is alleged that unless Defendant and the Commission are restrained and enjoined, they will continue to do so.

15. The Commission's assertions and actions based-thereon infringe upon the Nation's sovereignty and rights to self-government and self-determination, and impose adverse and unlawful burdens on the Nation and its members.

16. The Nation is suffering and will suffer irreparable harm in the absence of declaratory and injunctive relief, and the Nation has no adequate remedy at law.

DEMAND FOR RELIEF

Plaintiff Osage Nation respectfully prays this Court enter judgment in its favor as follows:

(a) Pursuant to 28 U.S.C. §2201, enter a declaratory judgment holding:

> (1) that the Nation's reservation (comprising all of Osage County, Oklahoma) is and remains Indian country of the Nation; and
>
> (2) that the Nation's members who are employed by the Nation and reside within the geographical boundaries of the Nation's reservation are not subject to or required to pay taxes to Defendant State of Oklahoma on the income earned by the Nation's members from their tribal employment;

(b) Ordering a permanent injunction restraining and prohibiting Defendant, the Commission, all their officers, employees, agents and those acting in concert or participation with them from levying or collecting Oklahoma state income taxes upon the income of the Nation's members who are employed by the Nation and reside within the geographical boundaries of the Nation's reservation;

(c) Providing such other and further relief as the Court finds just and equitable.

PITCHLYNN & MORSE, P.A.

By:______________________________
GARY S. PITCHLYNN, OBA#7180
124 East Main Street
P.O. Box 427
Norman, OK 73070
Telephone: (405) 360-9600
Fax: (405) 447-4219

ATTORNEY FOR PLAINTIFF

EXHIBIT "A"

FILED
APR 28 2000
OFFICE OF ADMINISTRATIVE LAW JUDGES
OKLAHOMA TAX COMMISSION

BEFORE THE OKLAHOMA TAX COMMISSION

STATE OF OKLAHOMA

In Re:

MELVIN WEBB and
MARY JO WEBB,

*Taxpayers.*

No. N-99-041

## HEARING EXAMINER'S REPORT

The above-named taxpayers protest the proposed assessment of income taxes on income received from employment in "Indian country." Upon consideration of said protest, the files and records of the Oklahoma Tax Commission, and the submissions of the parties, the undersigned makes the following findings of fact, conclusions of law, and recommendation as to the final disposition of said protest.

## FINDINGS OF FACT

1. Taxpayer, Mary Jo Webb, is a member of the Osage Nation of Oklahoma, a federally-recognized Indian tribe.

2. During the year 1996, taxpayer was employed by the Tribe on tribal trust lands. On taxpayer's original state income tax return for that year, taxpayer excluded the income from such employment, contending such income to be exempt from state taxation.

2000-05-30- 018

3. On August 30, 1999, the Audit Division disallowed the exclusion and proposed the assessment of additional taxes in the amount of $945.00, plus interest thereon to that date totaling $336.70, and penalty in the amount of $94.50.

4. During the time in question, taxpayer and her spouse lived in Fairfax, Oklahoma. The town of Fairfax is situated within the exterior borders of the original treaty lands of the Osage Nation in Oklahoma. Taxpayers, however, did not live on a formal Indian reservation or on tribal lands reserved or set apart by the United States for the use, occupancy or benefit of the Tribe. Taxpayers did not live on an Indian allotment, either restricted or held in trust by the United States, or on lands that had been set aside by the Federal Government for the use of Indians as Indian land, and which were under federal superintendence. The property where taxpayers resided was owned in fee simple, without restrictions. Taxpayer and her spouse paid real and personal property ad valorem taxes on said property to the County Treasurer of Osage County.

## CONCLUSIONS OF LAW

1. The State is precluded from taxing the income of a member of a federally-recognized Indian tribe who both earns that income and lives within Indian country governed by the member's tribe. *McClanahan v. State Tax Commission of Arizona*, 411 U.S. 164 (1973); *Oklahoma Tax Commission v. Sac and Fox Nation*, 508 U.S. 114 (1993); *Oklahoma Tax Commission v. Chickasaw*

*Nation*, 515 U. S. 450, 115 S. Ct. 2214 (1995). Oklahoma, however, may tax the income (including wages from tribal employment) of all persons, Indian and non-Indian alike, residing in the State outside Indian country. *Chickasaw Nation*, 115 S. Ct., at 2217.

2. As defined by federal law and decisions of the U.S. Supreme Court, "Indian country" includes formal and informal reservations, dependent Indian communities, and Indian allotments, whether restricted or held in trust by the United States, the Indian titles to which have not been extinguished. 18 U.S.C. §1151; *Sac and Fox*, 508 U.S., at 123. Formal Indian reservations have not existed in Oklahoma for many years. For purposes of Section 1151, however, the Supreme Court has recognized "informal" reservations, which include lands held in trust for a tribe by the United States, *Oklahoma Tax Commission v. Citizen Band of Potawatomi Tribe of Okla.*, 498 U.S. 505 (1991), and those portions of a tribe's original reservation which were neither allotted to individual Indians nor ceded to the United States as surplus land, but were retained by the tribe for use as tribal lands. *See, Sac and Fox, supra.*

3. The term "dependent Indian communities" refers to a limited category of Indian lands that are neither reservations nor allotments, and that satisfy two requirements—first, they must have been set aside by the Federal Government for the use of the Indians as Indian land; second, they must be under federal superintendence. *Alaska v. Native Village of Venetie Tribal Government*, ___ U.S. ___, 118 S. Ct. 948 (1998). Neither of these requirements is satisfied in this

case. The mere provision of health, social, welfare and economic services and programs by the tribe or the Federal Government cannot support a finding of Indian country. *Id.*

4. Taxpayer did not live on a formal or informal reservation, within a dependent Indian community, or on an Indian allotment. The mere fact that one's residence is located within what was once part of an Indian tribe's original treaty lands, does not by such fact alone mean that one lives in "Indian country" as that term is defined and used in 18 U.S.C. §1151. The term "Indian country" does not necessarily or automatically include all lands located within the original boundaries of a former or reduced Indian reservation. *See, e.g., South Dakota v. Yankton Sioux Tribe*, 118 S. Ct. 789 (1998).

5. Accordingly, taxpayer's income was fully taxable by the State of Oklahoma. The proposed assessment was correct.

**WAIVER OF PENALTY AND INTEREST**

The facts of this case demonstrate that taxpayer's claim of exclusion was based upon a good faith misunderstanding of the law regarding whether taxpayer's income was subject to taxation by the State. The penalty and interest ordinarily accruing, therefore, may be waived by the Commission pursuant to 68 O.S. Supp. 1997, §220.

## RECOMMENDATION

The foregoing protest should be denied, and the proposed assessment of deficient taxes should be adjudged due and owing. The penalty and interest assessed or accruing to the date of the Commission's order herein, and for a period of 30 days thereafter, should be waived.

DATED April 28, 2000.

STANLEY JOHNSTON
Hearing Examiner

2000-05-30- 018

## CERTIFICATE OF SERVICE OR MAILING

This is to certify that true and correct copies of the above and foregoing *Hearing Examiner's Report* were delivered to the Office of the General Counsel, to LaRonna Harris, Assistant General Counsel, and to Jill Bush, Audit Division, Oklahoma Tax Commission, and mailed with proper postage prepaid, to Melvin and Mary J. Webb, 151 West Ash, Fairfax, Oklahoma 74637, by the undersigned on this 28th day of April, 2000.

[signature]

N99041rlf

2000-05-30- 018

**BEFORE THE OKLAHOMA TAX COMMISSION**
**STATE OF OKLAHOMA**

In Re:

MELVIN WEBB and
MARY JO WEBB,

*Taxpayers.*

N-99-041

**ORDER NO.** 2000-05-30- 018

The above matter comes on for entry of a final order of disposition by the Oklahoma Tax Commission. Having reviewed the files and records herein, the Commission hereby adopts the Findings of Fact, Conclusions of Law and Recommendation set forth in the Hearing Examiner's Report entered herein on the 28th day of April, 2000, and the same, appended hereto, together herewith shall constitute the Order of the Commission.

SO ORDERED MAY 30 2000.

OKLAHOMA TAX COMMISSION

ASSISTANT SECRETARY

ROBERT E. ANDERSON, CHAIRMAN

JERRY JOHNSON, VICE-CHAIRMAN

DON KILPATRICK, SECRETARY-MEMBER

I do hereby certify that the above and foregoing is a true copy of the original document now on file in my office. Witness my hand and official seal of The Oklahoma Tax Commission, this MAY 30 2000

Don Kilpatrick, Secretary
By
Assistant Secretary
Oklahoma Tax Commission