# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) OSAGE NATION, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| vs. | ) | Case No. 01CV0516B (M) |
| | ) | |
| (1) STATE OF OKLAHOMA, *ex rel.* OKLAHOMA TAX COMMISSION; | ) ) ) | |
| (2) ROBERT E. ANDERSON, Chairman of the Oklahoma Tax Commission; | ) ) ) | |
| (3) JERRY JOHNSON, Vice-Chairman of the Oklahoma Tax Commission; and | ) ) ) | |
| (4) DON KILPATRICK, Secretary-Member of the Oklahoma Tax Commission, | ) ) ) | |
| *Defendants.* | ) | |

**FILED SEP 2 4 2001 Phil Lombardi, Clerk U.S. DISTRICT COURT**

## OKLAHOMA TAX COMMISSION'S SPECIAL APPEARANCE AND MOTION TO DISMISS AMENDED COMPLAINT AND OPENING BRIEF IN SUPPORT

COME NOW the Defendants State of Oklahoma, *ex rel.* Oklahoma Tax Commission, Robert E. Anderson, (former) Chairman of the Oklahoma Tax Commission, Jerry Johnson, Vice-Chairman of the Oklahoma Tax Commission and Don Kilpatrick, Secretary-Member of the Oklahoma Tax Commission (collectively "OTC"), and, pursuant to FED. R. CIV. P. 12(b)(1), appear specially and move this Court for an order dismissing Plaintiff's causes of action against them alleged in the Amended Complaint for the reasons that this Court lacks jurisdiction over the subject matter. In support, the OTC respectfully submits that the statutes relied upon by Plaintiff for its invocation of this Court's jurisdiction fail to abrogate the OTC's Eleventh Amendment sovereign immunity from suit, and that Plaintiff's claims are barred by the terms of the Tax Injunction Act.

*mail no env. c/ J*

## NATURE OF AMENDED COMPLAINT FILED BY OSAGE NATION

1. Plaintiff's Amended Complaint seeks (1) a declaratory judgment holding all of Osage County, Oklahoma to be its formal reservation and therefore Indian Country, (2) a declaratory judgment holding that all its members employed by it and living in the geographical boundaries of that County are exempt from Oklahoma income taxes on their tribal wages and (3) a permanent injunction against the OTC and its officers, employees and agents from levying or collecting those income taxes from such persons. (Amended Complaint, p. 5.)

2. Plaintiff asserts this Court has jurisdiction pursuant to 28 U.S.C. § 1331 ("federal question" jurisdiction) and 28 U.S.C. § 1362 ("Indian claim" jurisdiction). (Amended Complaint, ¶1.)

3. Plaintiff alleges the OTC is an agency of the State of Oklahoma authorized to administer and enforce Oklahoma's tax laws, and that the named individual Defendants are the administrators appointed by the Governor of the State of Oklahoma to administer that agency. (Amended Complaint, ¶4.)

4. Plaintiff alleges that it is an Indian tribe with a governing body duly recognized by the Secretary of the Interior. (Amended Complaint, ¶3.)

5. Plaintiff alleges its causes of action arise under 18 U.S.C. § 1151 (the Federal statute defining what territory constitutes "Indian Country") for purposes of its "Indian claim" jurisdiction assertion. (Amended Complaint, ¶1.)

6. Attached to Plaintiff's Amended Complaint as an exhibit is a copy of OTC administrative order No. 2000-05-30-018, denying the State tax court protest of Mary Jo Webb, an Osage tribal member, to an assessment of Oklahoma income taxes. (Amended Complaint, Exhibit A.)

## ARGUMENT AND AUTHORITIES

*A.     The Eleventh Amendment to the U.S. Constitution Bars All Plaintiff's Claims For Relief Against the State*

The terms of U.S. CONST. amend. XI provide:

The judicial power of the United States shall not be construed to extend to any suit in law *or equity*, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State. (Emphasis added.)

The Amendment is the very embodiment of States' sovereign immunity within the federation. Its bar to Federal Court jurisdiction extends not only to suits by citizens of another sister or foreign State, but as well to suits against States by their *own* citizens. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 505, 33 L.Ed. 842 (1890). It encompasses injunctive and declaratory claims in addition to actions for money damages, *Cory v. White*, 457 U.S. 85, 102 S.Ct. 2325, 2329, 72 L.Ed.2d 694 (1982).

The United States Supreme Court in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) was faced with the question of the powers of Congress to abrogate a State's Eleventh Amendment immunity from suit in a federal court pursuant to the Indian Commerce Clause of Article I of the Constitution. The particular issue was whether the enforcement provisions of the Indian Gaming Regulatory Act -- which granted federal courts original jurisdiction to compel a State to enter a gambling compact with a tribe -- passed Eleventh Amendment scrutiny. The State of Florida successfully challenged the power of Congress to grant such jurisdiction.

The Court pronounced a two-prong test for determining the constitutionality of a Federal statute purporting to confer upon U.S. District Courts jurisdiction to hear suits against States: (1) whether Congress *unequivocally had expressed* intent to abrogate States' sovereign immunity and

3

(2) whether Congress had acted pursuant to a *valid exercise of power*. The Court held that, while the enforcement provisions of the Indian Gaming Regulatory Act (passed under the *aegis* of the Indian Commerce Clause to the U.S. Constitution) *evinced Congress' intent* to abrogate Florida's sovereign immunity, the particular Article I plenary power cited as Congress' authority was insufficient to grant Congress the *power* so to do. The Court reasoned that the Eleventh Amendment restricts not only Congress' *Article III* powers to control directly the jurisdiction of Federal District Courts, but also its ability to use its *Article I* plenary powers to legislate the Courts' jurisdiction, thereby attempting to circumvent the Eleventh Amendment. The Court concluded that as a matter of law the Indian Commerce Clause cannot confer on Congress the ability to penetrate a State's sovereign immunity shield. *Seminole*, 116 S.Ct. at 1130.

Congress' intent to abrogate the States' sovereign immunity from suit must be obvious from a clear legislative statement. *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 111 S.Ct. 2578, 2584, 115 L.Ed.2d 686 (1991). In *Blatchford* the United States Supreme Court directly reached the issue whether Section 1362 eliminated a State's Eleventh Amendment immunity from suit in a federal forum. In that case two Native American villages brought an action in federal court against Alaska seeking an order for that State's Department of Community and Regional Affairs to pay them the full amount of money allocated to them under a state revenue sharing statute. Their shares had been reduced from the originally-promised amounts because of an expansion of the program to include recipients other than native villages. The Court held that Section 1362 does not eliminate a State's Eleventh Amendment immunity because its clear language shows no such evidence of Congressional intent. *Blatchford*, 111 S.Ct. at 2584. The Court reasoned that not only was the statute's language too general, but that Section 1362 cannot fairly be read as a delegation of federal executive power to the tribes to sue in the same capacity as the United States Government, thus

4

avoiding Eleventh Amendment infirmity altogether. In so doing the Court disapproved reliance upon *Moe v. Confederated Salish & Kootenai Tribes,* 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed. 96 (1976) for any theory to the contrary. The Court also gave note of the similarity between Section 1362's general language and that of Section 1331. *Blatchford,* 111 S.Ct. at 2584.

The underpinning of this rule is the recognition of the important role played by the Eleventh Amendment and the broader principle of federalism it reflects. A general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment as understood at the time of the Constitution's ratification. *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 3149, 87 L.Ed.2d 171 (1985). Stated differently, the fact that Congress has granted *jurisdiction* to hear a claim does not mean that it has *abrogated* all defenses to that claim. *Blatchford, supra,* 111 S.Ct. at 2585, n. 4. The Court in *Seminole* severely limited the circumstances under which Congress permissibly may grant federal courts jurisdiction to hear claims against States. Prior to *Seminole*, only two sources of congressional power allowed the abrogation of Eleventh Amendment immunity: Section 5 of the Fourteenth Amendment and the Interstate Commerce Clause. *See Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 2669-2671, 49 L.Ed.2d 614 (1976); *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 109 S.Ct. 2273, 2284, 105 L.Ed.2d 1 (1989). The Court in *Seminole* overruled *Union Gas,* (a mere plurality opinion to begin with), and removed the Interstate Commerce Clause as a source of power under which Congress could act to abrogate States' sovereign immunity. *Seminole,* 116 S.Ct. at 1132. Hence, the only remaining basis for Congress' abrogation of States' immunity is Section 5 of the Fourteenth Amendment.

In *City of Boerne v. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 2166, 138 L.Ed.2d 624 (1997), the United States Supreme Court held that Congress' powers under Section 5 of the Fourteenth Amendment only extend to permit *corrective legislation redressing civil rights* rather than more

5

general laws protecting Fifth Amendment property rights. The Court in *Boerne* held that the enforcement provisions of the Religious Freedom Restoration Act of 1993 exceeded Congress' remedial powers under Section 5 of the Fourteenth Amendment. This, then, is the backdrop against which Courts identify a Fourteenth Amendment-related law which *may* be a valid effort by Congress to abrogate sovereign immunity.

That a flurry of litigation followed in the wake of *Seminole* indicates that this lone power will be construed very narrowly by the United States Supreme Court and federal appellate courts. In *Wilson-Jones v. Caviness*, 99 F.3d 203, 210 (6th Cir. 1996) the plaintiffs asserted that their suit for money damages against Ohio for violations of the Fair Labor Standard Act survived the effects of *Seminole*. Plaintiffs there urged that that Act fell under the ability of Congress to enforce the Equal Protection Clause by way of Section 5 of the Fourteenth Amendment, in addition to the Act being an exercise of Congress' powers under Article I of the U.S. Constitution. The appellate court reversed the trial court's refusal to dismiss the suit on the basis of *Seminole* for the reason that there was in the Act no explicit comment from Congress that it was attempting to protect a traditional class of persons from discrimination.

Subsequently in *Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank,* 527 U.S. 627, 119 S.Ct. 2199, 2210, 144 L.Ed.2d 575 (1999), the United States Supreme Court held invalid the Patent and Plant Variety Protection Remedy Clarification Act's legislative attempt pursuant to Article I to abrogate States' sovereign immunity for the reason that it clearly was not enacted pursuant to Fourteenth Amendment anti-discrimination aims. During the same term, in *Alden v. Maine*, 527 U.S. 706, 119 S.Ct. 2240, 2246, 144 L.Ed.2d 636 (1999), the Court reiterated the principles announced in *Seminole* and held that the powers delegated to Congress under Article I do not include the ability to subject non-consenting States to private money

damages suits in their *own* state courts.  In *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000), the Court held unconstitutional Congress' attempt to abrogate States' immunity in the Age Discrimination in Employment Act as exceeding its Fourteenth Amendment enforcement powers.

*This jurisprudential trend is unmistakable.*  Federal courts no longer yield to the temptation to find a Fourteenth Amendment purpose to federal legislation and so rescue any provisions in those laws abrogating States' sovereign immunity.  Those Courts have been very cautious in finding Congressional power to act pursuant to Section 5 of the Fourteenth Amendment.  The majority position has been to find such power only when Congress is acting to redress wrongs against the civil rights of members of a protected class.

   *i.*   ***Sections 1331 and 1362 Fail the First Prong***

*The statutes relied upon by Plaintiff for its assertion of this Court's jurisdiction do not evidence unequivocal Congressional intent to abrogate the States' immunity from suit in Federal Court.*  Plaintiff relies on two specific Federal statutes as its grounds for invoking this Court's subject matter jurisdiction.  The terms of 28 U.S.C. § 1331 provide:

> "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States."

The terms of 28 U.S.C. § 1362 provide:

> "The district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws or treaties of the United States."

Section 1362 cannot provide a basis for this Court's jurisdiction because that statute has already been treated by the United States Supreme Court as not containing sufficient Congressional

intent to abrogate States' immunity, *Blatchford, supra.*, 111 S.Ct. at 2584. Section 1331 likewise constitutes a *mere general authorization* to sue in federal court. Nowhere in its terms does it specify which federal laws or treaties, or which portions of the Constitution from which a claim may arise to be entertained by the court. Significantly, it does not *specify* that a State may be sued under its auspices. Section 1331 simply constitutes a broad grant of jurisdiction to federal courts over a variety of claims independent of the identity of the defendant in a particular suit. *See, e.g., Powell v. McCormack*, 395 U.S. 486, 89 S.Ct. 1944, 1960, 23 L.Ed.2d 491 (1969). In short, Congress' intent as to whether a State may or may not be sued under these statutes cannot be made known from any unmistakably clear language appearing in their terms. *See, e.g., Dellmuth v. Muth*, 491 U.S. 223, 109 S.Ct. 2397, 2399-2400, 105 L.Ed.2d 181 (1989).

### ii.     *Sections 1331 and 1362 Fail the Second Prong*

Should this Court determine that Sections 1331 and 1362 pass the first *Seminole* prong, the statutes as relied upon by Plaintiff do not survive the second requirement that jurisdiction over the State be given to a federal court pursuant to a *valid exercise of Congress' powers*. Even if this Court should find the requisite Congressional *intent* in Sections 1331 and 1362 to abrogate Oklahoma's immunity, it should nevertheless find that Congress is without the *power* to vest it with jurisdiction in this case. Neither statute constitutes an effort by Congress to redress wrongs against the civil rights of a member of a protected class of citizens. The teachings of the case law examined above compel the conclusion that neither of the sections cited by Plaintiff constitutes an effort on Congress' part sufficient to bestow on this Court jurisdiction to hear these claims. The OTC urges this Court to find that it therefore is immune from this lawsuit.

### B.     *The Tax Injunction Act Deprives This Court of Jurisdiction to Hear Any of Plaintiff's Claims Against the OTC*

In addition to the failure of Sections 1331 and 1362 to pass muster under the strictures of the Eleventh Amendment, Plaintiff's claims raised in this Court do not clear the hurdle posed by the Tax Injunction Act. The terms of 28 U.S.C. § 1341 provide:

> The district court shall not *enjoin, suspend or restrain* the assessment, levy or collection of any tax under any State law where a plain, speedy and efficient remedy may be had in the courts of such state. (Emphasis added.)

This statute constitutes a near complete jurisdictional impediment to Federal Court interference with State administration of tax laws. *Southland Royalty Co. v. Navajo Tribe of Indians,* 715 F.2d 486, 491 (10th Cir. 1983). It forbids not only Federal injunctive and declaratory relief against the State, *California v. Grace Brethren Church,* 457 U.S. 393, 102 S.Ct. 2498, 2507-08, 73 L.Ed.2d 93 (1982), but *any* sort of claim having the effect of restraining lawful State tax powers. *Fair Assessment in Real Estate Ass'n, Inc. v. McNary,* 454 U.S. 100, 102 S.Ct. 177, 185, 70 L.Ed.2d 271 (1981); *Blangeres v. Burlington Northern, Inc.,* 872 F.2d 327, 328 (9th Cir. 1989). It's restrictive force *specifically* has been held to deprive a federal court of jurisdiction to determine whether land is Indian Country for purposes of state taxation. *Brooks v. Nance,* 801 F.2d 1237, 1240 (10th Cir. 1986); *Amarok Corp. v. State of Nevada Dept. of Revenue,* 935 F.2d 1068, 1069-1070 (9th Cir. 1991).

The sole requirement for a State to invoke this provision is for it to have available to the taxpayer an adequate state remedy for disputing the taxation issue. The United States Supreme Court has pronounced that this state remedy need *only* be procedural and meet certain *minimal* procedural standards satisfied by a full hearing on the merits. *Rosewell v. LaSalle Nat'l Bank,* 450 U.S. 503, 101 S.Ct. 1221, 1229, 67 L.Ed.2d 464 (1981).

Plaintiff attached to its Amended Complaint an OTC administrative order issued in a state

9

tax court proceeding instigated by one of its tribal members. The gist of the Amended Complaint hence is to advance the tribal income tax exemptions of Plaintiff's sundry tribal members. In the proceeding which generated the administrative order, a full hearing was available under the terms of OKLA. STAT. tit. 68 § 221 (Supp. 2000), with the right to appeal to the Oklahoma Supreme Court under the terms of OKLA. STAT. tit. 68 § 225 (Supp. 2000). In addition, tribal members have open the procedure outlined in OKLA. STAT. tit. 68 § 226 (1991) whereby they may pay the assessed tax, give special notice to the OTC and sue in Federal or State district court to recover the amount on a Constitutional theory. The fact that taxpayers must pay the assessed tax prior to appealing an administrative decision or suing in district court for recovery does not adversely effect the sufficiency of the state remedy for purposes of the Tax Injunction Act's application. *See Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 63 S.Ct. 1070, 1074, 87 L.Ed. 1407 (1943). Because Plaintiff's tribal members have available State court remedies to address their grievances, this Court is barred by the terms of the Tax Injunction Act from hearing this lawsuit.

      Plaintiff's Amended Complaint calls for both declaratory and injunctive relief to expand the territory which properly may be considered Indian Country under federal law, and so exempt all of its member-employees from State income taxes on their tribal-source wages. These claims *per se* are barred by the Tax Injunction Act.

WHEREFORE, the Defendant State of Oklahoma, *ex rel.* Oklahoma Tax Commission prays that the Court dismiss the Amended Complaint for lack of subject matter jurisdiction, and grant such other relief as is deemed appropriate.

Respectfully submitted,

_____
Douglas B. Allen, OBA #213
General Counsel
Sean R. McFarland, OBA #13729
Assistant General Counsel
Amber L. Willingham, OBA #16772
Assistant General Counsel
OKLAHOMA TAX COMMISSION
P.O. Box 53248
Oklahoma City, OK 73152-3248
Tele. (405) 521-3141
Fax (405) 521-2036

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that on the 21 day of September, 2001, I deposited a true and correct copy of the foregoing in the U.S. Mail, postage paid, to the following:

Gary S. Pitchlynn
Patrick A. Morse
PITCHLYNN & MORSE, P.A.
124 East Main Street
P.O. Box 427
Norman, OK 73070

_____
Sean R. McFarland