IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

**FILED**
OCT 19 2001
Phil Lombardi, Clerk
U.S. DISTRICT COURT

| | |
|---|---|
| (1) OSAGE NATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 01CV0516B (M) |
| | ) |
| (1) STATE OF OKLAHOMA, *ex rel.* OKLAHOMA TAX COMMISSION; | ) |
| | ) |
| (2) ROBERT E. ANDERSON, Chairman of the Oklahoma Tax Commission; | ) |
| | ) |
| (3) JERRY JOHNSON, Vice-Chairman of the Oklahoma Tax Commission; and | ) |
| | ) |
| (4) DON KILPATRICK, Secretary-Member of the Oklahoma Tax Commission, | ) |
| | ) |
| Defendants. | ) |

**OKLAHOMA TAX COMMISSION'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**

COMES NOW the Defendant State of Oklahoma, *ex rel.* Oklahoma Tax Commission, ("OTC"), and, pursuant to N.D. LR 7.1 D. submits its reply brief to the response of the Plaintiff. In support, the OTC respectfully submits that the case law relied upon by Plaintiff for its assertion of this Court's jurisdiction over the OTC is inapplicable.

*I. Seminole Tribe of Florida v. Florida Is Controlling Authority Upon This Court*

The Plaintiff asserts, *inter alia*, that the Supreme Court's decision in *Seminole Tribe of Florida V. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) is not controlling authority for determining jurisdiction in this matter. The plain and sweeping holding of that opinion is that "[t]he Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction." 116 S.Ct. at

1132. After all, "[t]he very object and purpose of the [Eleventh] Amendment was to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." *In re Ayers*, 123 U.S. 443, 505, 8 S.Ct. 164, 183, 31 L.Ed. 216 (1887).

*Seminole* stands for the proposition that "Congress' power to abrogate the States' sovereign immunity is now limited to congressional acts pursuant to §5 of the Fourteenth Amendment." *Mitchell v. California Franchise Tax Board*, 222 B.R. 877 (Bankr. 9th Cir.1998). "...[I]f *Seminole* made anything clear, it is that Eleventh Amendment immunity is a function of a State's sovereign constitutional status, not Congress' Article I powers." *AER-Aerotron v. Tex. Dept. of Transportation*, 104 F.3d 677, 683 (4th Cir. 1997) (Niemeyer, J., concurring).

It is impossible to avoid the implications *Seminole* has on the present case. The litany of case law which follows *Seminole* is endless. The substance of *Seminole* is that if Congress did not *first* intentionally and unequivocally attempt to abrogate the sovereign immunity of the States in the language of the statute itself, and *second* did not do so pursuant to a legitimate power given it by the Constitution (which *Seminole* limits to §5 of the Fourteenth Amendment), then jurisdiction over a State does not rest in the Court in which the case was filed.

In the present case, the statutes Plaintiff claims purport to grant jurisdiction over the state do not, by the farthest stretch of the imagination, attempt to abrogate a State's Eleventh Amendment right of sovereign immunity. Contrary to the statements of the Plaintiff, the *Seminole* opinion clearly is pivotal in this matter.

### II. *Blatchford v. Native Village of Noatak* Effectively Overruled *Moe v. Confederated Salish & Kootenai Tribes*

Plaintiff relies on *Moe v. Confederated Salish & Kootenai Tribes*, 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976) for the proposition that 28 U.S.C. § 1362 confers upon this Court

jurisdiction to adjudicate a tribe's claim against the State. The U.S. Supreme Court made clear in *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 111 S.Ct. 2578, 2584, 115 L.Ed.2d 686 (1991) that *Moe* no longer served as a basis for Section 1362 jurisdiction over lawsuits by tribes against States. Plaintiff quotes the *Blatchford* opinion, in part, for support. However, Plaintiff omits the operative language in *Blatchford*, disregarding the following portion of that opinion:

> *Moe* did not purport to be saying that § 1362 equated tribal access with the United States' access *generally*, but only "at least in some respects,"... or "in certain respects,"... [The Tribes] now urge us, in effect, to eliminate this limitation utterly — for it is impossible to imagine any more extreme replication of the United States' ability to sue than replication even to the point of allowing unconsented suit against state sovereigns. This is a vast expansion upon *Moe*. Section 1341, which *Moe* held § 1362 to eliminate, in its application to tribal suits, was merely a limitation that Congress itself had created — committing state tax-injunction suits ... to state courts as a matter of comity. Absent that statute, state taxes could constitutionally be enjoined.... <u>The obstacle to suit in the present case, by contrast, is a creation not of Congress but of the Constitution.</u> A willingness to eliminate the former in no way bespeaks a willingness to eliminate the latter, especially when limitation to "certain aspects" has been announced. (Underlined emphasis added. Internal citations omitted.)
>
> 111 S.Ct. at 2584.

The Supreme Court went on to say that in any Eleventh Amendment analysis the threshold inquiry always remains whether Congress' unequivocal intent to abrogate immunity has been made with unmistakable clarity. It then held that Section 1362 fails this test. *Id.*

### III.    *Sac & Fox Nation of Missouri v. Pierce* Represents Aberrant Circuit Case Law

Plaintiff relies upon *Sac & Fox Nation of Missouri v. Pierce*, 213 F.3d 566, 572 (10th Cir. 2000) for the proposition that *Moe, supra* retains its vitality to rescue this suit. That case simply is a restatement of the dissenting view in *Blatchford*, 111 S.Ct. at 2586 and, in any event, does not apply to claims such as Plaintiff makes in this cause.

The issue in *Pierce* was whether Kansas could enforce its motor fuel taxation powers on

3

tribal land *held in trust* for the tribe by the Federal Government. 213 F.3d at 569. By contrast, Plaintiff's claim in this cause is for a determination that all of Osage County is its *formal reservation*. The issue of State taxation of wages earned by tribal members/employees residing on *trust land* has already been resolved unfavorably toward the State. *See Okla. Tax Com'n v. Sac & Fox Nation,* 508 U.S. 114, 113 S.Ct. 1985, 124 L.Ed.2d 30 (1993).

The appellate court in *Pierce* went on to *reverse* a district court judgment against Kansas. Certiorari was sought by both the Tribe and the State, and denied. *See Pierce v. Sac & Fox Nation of Missouri,* ___ U.S. ___, 121 S.Ct. 1078, 148 L.Ed.2d 955 (2001); *Sac & Fox Nation of Missouri v. Pierce,* ___ U.S. ___, 121 S.Ct. 1078, 148 L.Ed.2d 955 (2001). A more detailed analysis of this case provides insight into the likely reasons for this denial of review. The State of Kansas as a prevailing party on the merits merely disagreed with the Court's assertion of jurisdiction over it. It would have been a waste of time for the U.S. Supreme Court to grant certiorari and so effectively bring about the *same result* on an issue which it had already resolved in *Seminole*. The Supreme Court's refusal to grant certiorari hence hardly can be considered its blessing upon the *Pierce* opinion's reasoning.

Likewise, Plaintiff misconceives that the Court in *Pierce* intended to resurrect *Moe* from the grave excavated for it in *Blatchford*. The *Pierce* opinion fails to acknowledge the implications of *Seminole* on the immunity claimed by Kansas. For these reasons the appellate court decision in *Pierce* flies in the face of U.S. Supreme Court jurisprudence.

### IV. The Doctrine in <u>Ex Parte Young</u> Is Ineffective To Abrogate OTC's Immunity From This Suit

Having been alerted to the OTC's Eleventh Amendment defense to the claims brought against the State *alone* in Plaintiff's original Complaint, the Plaintiff in its Amended Complaint now adds as parties defendant the three individual officials charged with administering the OTC's activities. Plaintiff's purpose is to invent application of *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) and so avoid the Eleventh Amendment's bar to its suit. However, Plaintiff's re-captioning of its pleading is ineffective to invoke *Young*.

The facts in *Young* were erratic and unique. In 1907 the State of Minnesota enacted legislation reducing railroad rates and providing penalties for violation. The dispute arose when a Minnesota official — Attorney General Edward T. Young — sought to enforce the state law in the face of a Federal injunction. Initially, a group of railroad shareholders sued in Federal Court to invalidate the law on Fourteenth Amendment property-deprivation due process grounds. Young was among the several defendants against whom the injunction was granted. When he violated the injunction by suing the railroads in State court to enforce the law, Young was cited for contempt in Federal Court and jailed. Young applied for *habeas corpus* relief in the U.S. Supreme Court.

The Court understood the matter to implicate the Eleventh Amendment. Employing a fiction, the Court held the underlying Federal injunction against Young to be proper. It announced the rule that, if the act alleged is unconstitutional, the use of the name of the State by one of its officials to perform that act (i.e., suing to enforce the unconstitutional State law) is not really an act with the authority of the State in its sovereign or governmental capacity. 28 S.Ct. at 454. Hence, Eleventh Amendment immunity would be unavailable to the State official. The doctrine is not, however, without modern limitations.

On the heels of *Seminole, supra*, in *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997), the U.S. Supreme Court was faced with a dispute all but identical to that which is here before this Court. There the Tribe sought a declaration in Federal Court that Lake Couer d'Alene lay within the boundaries of its formal reservation, and therefore was subject to tribal, rather than state territorial jurisdiction. Anticipating the State of Idaho's interposition of an Eleventh Amendment defense, the Tribe grafted onto its lawsuit several Idaho State officials as parties to the action.

The issue was whether the Tribe's naming individual state officials as defendants brought into operation the doctrine of *Young*, and so divested the State of Idaho of its immunity from suit in Federal Court. A majority of the Court found the legal fiction of *Young* not to apply in a setting where vital State interests of geographical sovereignty and political control are at risk of destruction. Justice Kennedy wrote for the Court:

> When suit is commenced against state officials, even if they are named and served as individuals, the State itself will have a continuing interest in the litigation whenever state policies or procedures are at stake.
> 
> ***
> 
> To interpret *Young* to permit a federal-court action to proceed in every case where prospective declaratory and injunctive relief is sought against an officer, named in his individual capacity, would be to adhere to an empty formalism and to undermine the principle, reaffirmed just last Term in *Seminole Tribe*, that Eleventh Amendment immunity represents a real limitation on a federal court's federal-question jurisdiction. The real interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captioning and pleading. Application of the *Young* exception must reflect a proper understanding of its role in our federal system and respect for state courts instead of a reflexive reliance on an obvious legal fiction.

117 S.Ct. at 2034.

The Court held that the Tribe's "bootstrapping" of adding on individual state officers to a claim against the State of Idaho was insufficient to defeat the latter's immunity from suit in Federal

6

Court where important state sovereignty issues were sought to be litigated. 117 S.Ct. at 2043.

Regardless of the addition of the three OTC Commissioners into this suit, the brunt of Plaintiff's Amended Complaint (as was the Tribe's in *Idaho*) is to obtain a declaration that the State of Oklahoma's sovereign power — of which the power to tax is an essential component — is void anywhere in Osage County. The legal theory upon which Plaintiff's claim rests is that all of that county remains its formal reservation and so is outside the territorial jurisdiction of the State. This assertion necessarily implicates other attributes of State sovereignty besides the power to tax. For, if the State of Oklahoma cannot levy its tax in a particular region constituting "Indian Country", neither can it exercise any other political control there. The doctrine of *Young* is ineffective to grant this Court jurisdiction to hear a suit seeking to destroy those powers.

WHEREFORE, the Defendant State of Oklahoma, *ex rel.* Oklahoma Tax Commission prays that the Court dismiss the Amended Complaint for lack of subject matter jurisdiction, and grant such other relief as is deemed appropriate.

Respectfully submitted,

Douglas B. Allen, OBA #213
General Counsel
Sean R. McFarland, OBA #13729
Assistant General Counsel
Amber L. Willingham, OBA #16772
Assistant General Counsel
OKLAHOMA TAX COMMISSION
P.O. Box 53248
Oklahoma City, OK 73152-3248
Tele. (405) 521-3141
Fax (405) 521-2036

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that on the 17th day of October, 2001, I deposited a true and correct copy of the foregoing in the U.S. Mail, postage paid, to the following:

> Gary S. Pitchlynn
> Patrick A. Morse
> PITCHLYNN & MORSE, P.A.
> 124 East Main Street
> P.O. Box 427
> Norman, OK 73070

Sean R. McFarland