FILED
**United States Court of Appeals**
**Tenth Circuit**

**December 26, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

OSAGE NATION,

        Plaintiff - Appellee,

        v.

STATE OF OKLAHOMA EX REL.
OKLAHOMA TAX COMMISSION;
THOMAS E. KEMP, JR., Chairman of
the Oklahoma Tax Commission;
JERRY JOHNSON, Vice-Chairman of
the Oklahoma Tax Commission; DON
KILPATRICK, Secretary-Member of
the Oklahoma Tax Commission,

        Defendants - Appellants.

No. 03-5162

N. D. Oklahoma

(D.C. No. CV-01-516-P)

---

## ORDER AND JUDGMENT*

---

Before **O'BRIEN**, **EBEL**, Circuit Judges, and **STEWART**, District Judge.**

---

        Notwithstanding the Eleventh Amendment, the district court permitted the

Osage Nation ("the Nation" or "the Tribe") to sue the State of Oklahoma, the

---

        * This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

        ** The Honorable Ted Stewart, United States District Judge for the District
of Utah, sitting by designation.

Oklahoma Tax Commission, and individual members of the Tax Commission in their official capacities in federal court to enjoin the State's assessment of income tax on tribal members who are employed by the Tribe and reside in Osage County, Oklahoma. Oklahoma's assessment of income tax would violate federal law only if all of Osage County is deemed to be "Indian country." Thus, the pivotal issue in this case is the areal extent of the Nation's land, not Oklahoma's taxing policy. The Nation seeks, in effect, to assert sovereign rights in direct opposition to the historically exercised sovereign authority of the State of Oklahoma. While this is not, by any means, a typical tax injunction suit, it nonetheless may proceed in federal court against the individual members of the Tax Commission under the *Ex parte Young* doctrine because it seeks relief that is prospective in nature.[1]

## I. BACKGROUND

In 1871, the Nation purchased a 1.5 million acre reservation ("the Osage Indian Reservation" or "the Reservation") in what is now north-central Oklahoma, between the Arkansas River and the Kansas state line. On June 28, 1906, Congress enacted the Osage Allotment Act, which allotted the entire surface of the Reservation to members of the Tribe. *See* Act of June 28, 1906, ch. 3572, 34 Stat. 539. In 1907, Oklahoma became a state and the Reservation was

---

[1] We do not reach the question of whether the disputed land is within the jurisdiction of the Tribe or the State. Our review is limited to determining whether the federal forum is proper.

incorporated into the State as Osage County.  *See* Act of June 16, 1906, ch. 3335, 34 Stat. 267, § 21.  Today, the Nation is still based in Osage County, which is the largest county in Oklahoma, covering some 2,250 square miles (approximately three percent of Oklahoma's total land area).  Osage County has a population of over 44,000 people, mostly non-Indians.

The State of Oklahoma only recognizes trust land and allotments within Osage County as "Indian country" under 18 U.S.C. § 1151.[2]  The Nation contends all of the land within Osage County is Indian country because the legal status of the Reservation has never been altered by Congress.  According to the Nation, the Osage Indian Reservation exists today as it did in 1871.  The State contends the Reservation lost its legal status when it was incorporated into the State at its statehood in 1907.  Consistent with this understanding, the State has exercised jurisdiction over all of Osage County, with the exception of trust land, since that time.  Specifically at issue in the Nation's suit is one aspect of the State's sovereignty – its assessment of income tax on tribal members who are employed by the Tribe on trust land and who reside within Osage County, but not on trust land.

As a general matter, a state cannot tax the income of a member of an Indian

---

[2]  18 U.S.C. § 1151 defines "Indian country" to mean "(a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government . . . , (b) all dependent Indian communities within the borders of the United States . . . , and (c) all Indian allotments, the Indian titles to which have not been extinguished . . . ."

tribe who is employed by the tribe and lives within Indian country. *McClanahan v. Ariz. State Tax Comm'n*, 411 U.S. 164, 165 (1973). A state can, however, tax the income of a tribal member who is employed by the tribe but resides outside Indian country. *Okla. Tax Comm'n v. Chickasaw Nation*, 515 U.S. 450, 463-67 (1995). Thus, whether Oklahoma's income tax is proper depends on whether all of the land within Osage County is Indian country or whether Indian country includes only that land within Osage County held in trust for the Tribe by the United States.

In 1999, a tribal member who was employed by the Tribe on trust land and lived within the boundaries of the pre-statehood Reservation but not on trust land protested the State's assessment of income tax on her. The Oklahoma Tax Commission denied the requested relief, concluding that because the tribal member did not live in Indian country within the meaning of 18 U.S.C. § 1151, her income was taxable. The Commission explained "[t]he mere fact that one's residence is located within what was once part of an Indian tribe's original treaty lands, does not by such fact alone mean that one lives in 'Indian country'. . . ." (Appellants' App. at 27.)

Following the Commission's decision, the Nation filed the instant suit against the State of Oklahoma ex rel. Oklahoma Tax Commission,[3] seeking

---

[3] "A suit *ex rel.* is typically brought by the government upon the application of a private party (called a *relator*) who is interested in the matter." BLACK'S LAW DICTIONARY 603 (Bryan A. Garner, ed., 7th ed. 1999). Where, as

declaratory and injunctive relief.  The Nation sought a declaratory judgment: "(1) that the Nation's reservation (comprising all of Osage County, Oklahoma) is and remains Indian country of the Nation; and (2) that the Nation's members who are employed by the Nation and reside within the geographical boundaries of the Nation's reservation are not . . . required to pay taxes to [the] State . . . on the income earned . . . from their tribal employment." (*Id.* at 11.)  The Nation also sought a permanent injunction "restraining and prohibiting Defendant[s] . . . from levying or collecting Oklahoma state income taxes upon the income of the Nation's members who are employed by the Nation and reside within the geographical boundaries of the Nation's reservation." (*Id.*)  The Nation asserted jurisdiction under 28 U.S.C. §§ 1331 and 1362.

The defendants filed a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing the Nation's suit was barred by the Eleventh Amendment.[4]  The Nation then filed an amended complaint, adding the individual

_____

(continued)
here, the designation is used as to a defendant, we afford it no significance.  Thus, we treat both Oklahoma and the Oklahoma Tax Commission as defendants.

[4]  The defendants also claimed the Nation's suit was barred by the Tax Injunction Act, 28 U.S.C. § 1341, which provides: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."   However, this Act does not bar suits brought by Indian tribes seeking to enjoin the enforcement of state tax law. *See Moe v. Confederated Salish & Kootenai Tribes of the Flathead Reservation*, 425 U.S. 463, 474-75 (1976).

members of the Tax Commission as defendants.  All of the defendants filed a

motion to dismiss the amended complaint, raising the same arguments as in the

original motion to dismiss.  The court denied the defendants' motion, relying on

our decision in *Sac & Fox Nation of Missouri v. Pierce*, 213 F.3d 566, 571-73

(10th Cir. 2000), *cert. denied*, 531 U.S. 1144 (2001).  The court explained "the

Tenth Circuit [in *Sac & Fox*] reasoned that federal courts have jurisdiction under

28 U.S.C. § 1362 to consider the merits of [a] Kansas fuel tax [assessed against

retail stores located on tribal land].  Consistent with the Tenth Circuit, this court

asserts jurisdiction under § 1362 and finds . . . the Eleventh Amendment . . . [does

not] bar this suit."  (*Id*. at 60.)  Under the collateral order doctrine, the defendants

appeal from that portion of the court's order relating to the Eleventh Amendment.

*Garramone v. Romo*, 94 F.3d 1446, 1452 (10th Cir. 1996) ("A district court's

denial of Eleventh Amendment immunity . . . is immediately appealable as a final

judgment under the collateral order doctrine.").

## II.  DISCUSSION

A.    The Eleventh Amendment

The Eleventh Amendment provides: "The Judicial power of the United

States shall not be construed to extend to any suit in law or equity, commenced or

prosecuted against one of the United States by Citizens of another State, or by

Citizens or Subjects of any Foreign State."  The Supreme Court has interpreted

this amendment to extend beyond its plain language to bar suits in federal court

-6-

against a state by its own citizens, *Hans v. Louisiana*, 134 U.S. 1, 21 (1890), or

by a foreign sovereign, *Principality of Monaco v. Mississippi*, 292 U.S. 313, 330

(1934).  The Court has also interpreted the Eleventh Amendment to bar suits

against a state by Indian tribes because tribes are analogous to foreign sovereigns.

*Blatchford v. Native Vill. of Noatak & Circle Vill.*, 501 U.S. 775, 782 (1991).

The Supreme Court has recognized three exceptions to a state's sovereign

immunity.  *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1285-86 (10th Cir. 1999).

First, a party may sue a state in federal court notwithstanding the Eleventh

Amendment if the state consents to suit.  *Id.* at 1286.  Second, a party may sue a

state if Congress has abrogated the state's sovereign immunity in a clear and

unequivocal manner pursuant to a valid exercise of its power.  *Seminole Tribe of

Fla. v. Florida*, 517 U.S. 44, 55 (1996).[5]  Finally, under *Ex parte Young*, 209 U.S.

123 (1908), a party may sue individual state officers in federal court in their

official capacity for prospective injunctive relief, so long as the suit does not fall

within the narrow exception enunciated in *Idaho v. Coeur d'Alene Tribe of Idaho*,

---

[5]  In *Seminole Tribe*, the Court held the Enforcement Clause (§ 5) of the Fourteenth Amendment is the only provision of the Constitution that empowers Congress to abrogate a state's immunity from suit.  517 U.S. at 59, 65, 72 n.15; *see also Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1195-96 (10th Cir. 1998).  The Court subsequently held that Congress' power under the Enforcement Clause extends only to the enactment of "appropriate" corrective or preventative legislation to enforce the provisions of the Fourteenth Amendment.  *See City of Boerne v. Flores*, 521 U.S. 507, 518-20 (1997) (holding Congress' enactment of the Religious Freedom Restoration Act of 1993 exceeded its enforcement power under § 5 of the Fourteenth Amendment).

521 U.S. 261 (1997).  *See Hill v. Kemp*, 478 F.3d 1236, 1255-56 (10th Cir. 2007).

Instead of relying on one of these three exceptions, the district court relied on 28

U.S.C. § 1362 and *Sac & Fox*.  The defendants contend this was error.  "We

review *de novo* a state's claim that a suit is barred by the Eleventh Amendment."

*Powder River Basin Res. Council v. Babbitt*, 54 F.3d 1477, 1483 (10th Cir. 1995).

B.    28 U.S.C. § 1362

Section 1362 provides that "[t]he district courts shall have original

jurisdiction of all civil actions, brought by any Indian tribe . . . wherein the matter

in controversy arises under the Constitution, laws, or treaties of the United

States."  In *Blatchford*, the Supreme Court rejected the argument that § 1362

constitutes a Congressional abrogation of Eleventh Amendment immunity because

it "does not reflect an unmistakably clear intent to abrogate immunity, made plain

in the language of the statute."  501 U.S. at 786 (quotations omitted).  The Court

explained "[t]he fact that Congress grants *jurisdiction* to hear a claim does not

suffice to show Congress has abrogated all *defenses* to that claim.  The issues are

wholly distinct."  *Id.* at 786 n.4.  The district court erred to the extent it conflated

the distinct concepts of subject matter jurisdiction and sovereign immunity.

In *Sac & Fox*, the case relied upon by the district court, we addressed

whether the Eleventh Amendment barred suit in federal court by three Indian

tribes to enjoin the State of Kansas from collecting tax on motor fuel distributed

to retail gas stations located on Indian lands within the State.[6]  213 F.3d at 569.

The district court had granted a permanent injunction prohibiting the State from

collecting the tax.  On appeal, the State contended the district court lacked

jurisdiction because the tribes' suit was barred by the doctrine of sovereign

immunity and the tribes lacked standing.  We "reject[ed] the State's jurisdictional

contentions, and conclude[d] the district court properly exercised jurisdiction over

this cause."  *Id.* at 571.

In reaching this result, we looked closely at *Moe v. Confederated Salish &*

*Kootenai Tribes of the Flathead Reservation*, 425 U.S. 463 (1976).  In *Moe*, the

Supreme Court read 28 U.S.C. § 1362 to imply that a tribe's access to federal

court to litigate federal question cases would be, at least in some respects (*e.g.*,

for the purpose of obtaining injunctive relief from state taxation), as broad as that

of the United States suing as the tribe's trustee.  425 U.S. at 472-73.  However, as

the Court made clear in *Blatchford*, "*Moe* did not purport to be saying that § 1362

equated tribal access [to federal courts] with the United States' access *generally*,

but only 'at least in some respects' or 'in certain respects.'"  501 U.S. at 784

(citations omitted).[7]  In *Sac & Fox*, we followed *Moe* and concluded the tribes'

---

[6]  Notably, the State of Kansas was not named as a defendant in *Sac & Fox*.
The only defendant was Karla Pierce, Secretary of the Kansas Department of
Revenue.

[7]  In *Blatchford*, the Supreme Court stated that *Moe* involved only a
question of jurisdiction, not of sovereign immunity: "[In *Moe*,] [s]ince Montana
had not objected in this Court on sovereign immunity grounds, its immunity had

suit to enjoin enforcement of the Kansas motor fuel tax was one of those "certain

respects."  213 F.3d at 572-73.[8]  We explained "*Moe* leads us to conclude that we

have jurisdiction under 28 U.S.C. § 1362 to reach the merits of this case.  Surely

if an Indian tribe may maintain suit on its own behalf in federal court to enjoin

collection of a state's cigarette sales tax, it may maintain a similar suit on its own

behalf to enjoin collection of a state's motor fuel distribution tax."  *Id.* at 572.

　　*Sac & Fox* does not speak to the real issue in this case, which is not

whether the State's income tax is proper.  While the Nation claims to be seeking

_____

(continued)
been waived and was not at issue." *Blatchford* at 785 n.3; *see also Agua Caliente
Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1049 n.8 (9th Cir. 2000)
("[N]or do we believe that *Moe* addressed the Eleventh Amendment issue.").
Thus, *Moe* may stand only for the limited proposition that, where a state has
waived its sovereign immunity, the Tax Injunction Act does not bar a tribe's suit
against the state in federal court because jurisdiction is conferred under § 1362.

　　[8]  Our holding in *Sac & Fox* must not be read too broadly or taken out of
context -- certainly there was no intent to ignore other unmistakably clear
language from *Blatchford*:

> Respondents now urge . . . a vast expansion upon *Moe*.  Section
> 1341, which *Moe* held § 1362 to eliminate in its application to tribal
> suits, was merely a limitation that Congress itself had created --
> committing state tax-injunction suits to state courts as a matter of
> comity.  Absent that statute, state taxes could constitutionally be
> enjoined.  The obstacle to suit in the present case, by contrast, is a
> creation not of Congress but of the Constitution [Eleventh
> Amendment immunity].  A willingness to eliminate the former in no
> way bespeaks a willingness to eliminate the latter, especially when
> limitation to "certain respects" has explicitly been announced.

501 U.S. at 784-85 (citation omitted).

only injunctive relief from state taxation, the essence of this case is whether the Nation or the State of Oklahoma is the supreme sovereign with respect to Osage County or whether some form of dual sovereignty may apply.  The Nation contends all of the land within Osage County is part of the Osage Indian Reservation and thus, Indian country.  If the Nation is correct, the State cannot collect income tax from any tribal members employed by the Tribe living in Osage County.[9]  The State contends the non-trust land in Osage County is not Indian country and instead is under the jurisdiction of the State.  If the State is correct, the income tax is proper.  Whether the non-trust portions of Osage County are Indian country is a question of jurisdiction, not of tax, and the relief the Nation seeks is to divest Oklahoma of sovereign rights, not simply to enjoin a tax.[10]  Because this suit is not a mere tax injunction suit, *Sac & Fox* is not controlling.  Rather, we must look to the principle announced in *Blatchford* – that 28 U.S.C. § 1362 does not override the State's Eleventh Amendment immunity.

---

[9]   A ruling in favor of the Nation on the merits could affect more than the State's ability to collect income tax.  The Nation might be able to foreclose Oklahoma from exercising sovereignty over Osage County in myriad other ways.

[10]   In its amended complaint, the Nation alleges: "Defendants' assertions and actions . . . infringe upon the Nation's sovereignty [sic] and rights to self-government and self-determination, and impose adverse and unlawful burdens on the Nation and its members."  (Appellants' App. at 22.)  In its brief, the Nation states it "seeks a judicial acknowledgment of a position the Nation has been asserting for years and that the State has refused to recognize – that the legal status of the Osage Reservation remains in existence as the Indian country of the Nation, within the meaning of 18 U.S.C. § 1151(a)."  (Appellee's Br. at 3.)

The Nation's suit can only proceed in federal court if it falls within one of the three recognized exceptions to sovereign immunity.

The first two exceptions are easily disposed of as neither party contends the State waived its sovereign immunity or that Congress has abrogated sovereign immunity in this context.  Thus, the district court erred in concluding the Nation's suit could proceed against the State and the Tax Commission in federal court. But that does not end the matter as to the individual defendants sued in their official capacities as we must consider whether the suit can proceed against them under the *Ex parte Young* exception to Eleventh Amendment immunity.[11]

C.    *Ex parte Young*

"In *Ex parte Young*, the Court held that the Eleventh Amendment generally will not operate to bar suits so long as they (i) seek only declaratory and injunctive relief rather than monetary damages for alleged violations of federal law, and (ii) are aimed against state officers acting in their official capacities, rather than against the State itself." *Hill*, 478 F.3d at 1255-56.[12]  The *Young*

---

[11]  The Nation contends we should not consider whether the *Ex parte Young* exception applies because the defendants did not make this argument in the district court.  Though the Eleventh Amendment is not jurisdictional in the traditional sense, it does have jurisdictional elements and thus we could consider this argument even if were raised for the first time on appeal.  *See Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1231 (10th Cir. 1999).  We note both parties have briefed the issue, although the Nation did so reluctantly.

[12]  Although the Nation added the individual Tax Commissioners as defendants in its amended complaint, it retained the State of Oklahoma and its Tax Commission.  In theory, we could remand this case for dismissal of the State

doctrine is premised on the fiction that a suit against state officers seeking only prospective injunctive relief is not an action against the state and is therefore not subject to the sovereign immunity bar. *Id.* at 1256. The doctrine strikes a delicate balance by ensuring on the one hand that states enjoy the sovereign immunity preserved for them by the Eleventh Amendment while, on the other hand, "giving recognition to the need to prevent violations of federal law." *Coeur d'Alene*, 521 U.S. at 269.

In *Coeur d'Alene*, the Court held the Eleventh Amendment barred suit by an Indian tribe against state officials, where the suit sought a declaration of the tribe's entitlement to the exclusive use, occupancy, and right to quiet enjoyment of submerged lands claimed by the State of Idaho. *Id.* at 265, 282 (Kennedy, J.).[13] The Court justified its rejection of *Young* on the basis that the tribe's suit was equivalent to a quiet title action and the relief sought would erase the state's regulatory authority over the disputed land. *Id.* at 282. The Court indicated its concerns were magnified because the land in question was submerged and states

_____

(continued)
and the Tax Commission as the *Young* doctrine only applies if the suit is asserted against state officers in their official capacity. For purposes of judicial efficiency, we will consider whether this suit could proceed under *Ex parte Young*, assuming the State and the Tax Commission were dismissed.

[13] While Justice Kennedy wrote the majority opinion in *Coeur d'Alene*, he commanded a majority only with respect to certain sections. *See Hill*, 478 F.3d at 1257 (discussing the "multiple and fractured opinions" involved in *Coeur d'Alene*). We cite only to sections that commanded a majority.

have historically had especially strong sovereign interests in navigable waters and

the lands underlying them.  *See id.* at 283-84.  The Court explained:

> [T]he declaratory and injunctive relief the Tribe seeks is close to the
> functional equivalent of quiet title in that substantially all benefits of
> ownership and control would shift from the State to the Tribe.  This
> is especially troubling when coupled with the far-reaching and
> invasive relief the Tribe seeks, relief with consequences going well
> beyond the typical stakes in a real property quiet title action.  The
> suit seeks, in effect, a determination that the lands in question are not
> even within the regulatory jurisdiction of the State.  The requested
> injunctive relief would bar the State's principal officers from
> exercising their governmental powers and authority over the disputed
> lands and waters.  The suit would diminish, even extinguish, the
> State's control over a vast reach of lands and waters long deemed by
> the State to be an integral part of its territory.  To pass this off as a
> judgment causing little or no offense to Idaho's sovereign authority
> and its standing in the Union would be to ignore the realities of the
> relief the Tribe demands.

*Id.* at 282.  Justice O'Connor wrote a separate concurrence, questioning the

"principal opinion['s] . . . central conclusion: that a case-by-case balancing

approach is appropriate where a plaintiff invokes the *Young* exception to the

Eleventh Amendment's jurisdictional bar, even when a complaint alleges a

violation of federal law and clearly seeks prospective relief."  *Id.* at 293-94

(O'Connor, J., concurring).  As we described in *Hill*, Justice O'Connor's

concurrence "seemed to suggest that we must assess whether a claim seeks relief

effectively equivalent to a retrospective judgment regardless of how it is formally

pled or denominated."  478 F.3d at 1258.

    In *Verizon Maryland, Inc. v. Public Service Commission of Maryland*,

decided five years after *Coeur d'Alene*, the Court made clear it was Justice

O'Connor's approach in *Coeur d'Alene* that controlled.  535 U.S. 635, 645

(2002).  The Court held "[i]n determining whether the doctrine of *Ex parte Young*

avoids an Eleventh Amendment bar to suit, a court need only conduct a

straightforward inquiry into whether the complaint alleges an ongoing violation of

federal law and seeks relief properly characterized as prospective."  *Id.*

(quotations and internal alterations omitted).[14]

It is not clear what is left of *Coeur d'Alene* following *Verizon Maryland*.

In *Western Mohegan Tribe and Nation v. Orange County*, decided post-*Verizon*

*Maryland*, the Second Circuit applied the *Coeur d'Alene* exception to the

*Young* doctrine to bar a tribe's suit against the State of New York and its

Governor, claiming the state was wrongly in possession of land in ten New York

counties that belonged to the tribe.  395 F.3d 18, 19 (2d Cir. 2004).  The lands at

issue included state parks, state wildlife management areas, state-managed lakes

and wetlands, state historic sites, and the Empire State Plaza, where the state

--------

[14]   Justice Kennedy concurred in the judgment in *Verizon Maryland* for
purposes of distinguishing *Coeur d'Alene*.  He explained: "[*Verizon Maryland*] is
unlike [*Coeur d'Alene*], where the plaintiffs tried to use *Ex parte Young* to divest
a State of sovereignty over territory within its boundaries.  In such a case, a
'straightforward inquiry,' which the Court endorses here . . . proves more
complex . . . .  In my view, our *Ex parte Young* jurisprudence requires careful
consideration of the sovereign interests of the State as well as the obligations of
state officials to respect the supremacy of federal law."  535 U.S. at 648-49
(Kennedy, J., concurring). His was a voice in the wilderness.  Justice O'Connor
took no part in the consideration or decision of *Verizon Maryland*.  *Id.* at 648.

capitol is located.  The court stated: "While, in other contexts, we have declined

to extend *Coeur d'Alene*'s holding we have not had occasion to consider a case

raising the core issues of land, state regulatory authority, and sovereignty

expressly examined by the *Coeur d'Alene* Court."  *Id.* at 23 (citations omitted).

The court concluded the tribe's suit did not fall within the *Young* exception

because the relief sought by the tribe was analogous to the relief sought in *Coeur*

*d'Alene*: "To the extent that the complaint alleges that there has never been a

lawful extinguishment of the Tribe's Indian title, it seeks a declaration from this

court that New York's exercise of fee title remains 'subject to' the Tribe's rights

. . . thus, the relief requested by the Tribe is, as much as that sought in *Coeur*

*d'Alene*, the functional equivalent of quiet the Tribe's claim to title in the New

York counties named in the complaint."  *Id.* (citation omitted).

      This case is different from *W. Mohegan* as it does not involve an actual title

dispute.  Sovereignty is the issue here, not ownership of land.  Our case law

instructs us not to consider state sovereignty in determining whether the *Young*

doctrine is applicable:

> [T]he courts of appeals need not (and should not) linger over the
> question whether "special" or other sorts of sovereign interests are at
> stake before analyzing the nature of the relief sought . . . .  Instead,
> the Supreme Court . . . instructed [in *Verizon Maryland*] that we are
> to proceed immediately in every case to the "straightforward [or so
> one might hope] inquiry" whether the relief requested is "properly"
> characterized as prospective or is indeed the functional equivalent of
> impermissible retrospective relief . . . .  [T]he sole question for us
> becomes whether the relief sought by [the plaintiff] is prospective,

not just in how it is captioned but also in its substance.

*Hill*, 478 F.3d at 1259.  We are certainly sympathetic to the State's argument and we reject the Nation's characterization of this suit as "nothing more than a mere tax case."  (Appellee's Br. at 28.)  Unlike *Hill*, this suit "calls to mind the sort of literal land grab effort made by the plaintiffs in *Coeur d'Alene*," *id.* at 1260, even though it does not involve an actual title dispute.  Nonetheless, we are compelled to follow *Hill.*  We may consider only whether the relief sought by the Nation is prospective in caption and substance, and we conclude it is.  The relief sought may have far-reaching implications on Oklahoma's sovereignty, but it nonetheless falls within the *Young* exception to Eleventh Amendment immunity and the suit can proceed against the individual members of the Tax Commission in federal court.

We **REVERSE** the district court's decision to allow the Nation's suit to proceed against the State of Oklahoma and the Oklahoma Tax Commission and remand for dismissal of those defendants.  As to the individual defendants, the decision of the district court is **AFFIRMED** for the stated reasons herein**.**

ENTERED FOR THE COURT


Terrence L. O'Brien
Circuit Judge

**UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**
**OFFICE OF THE CLERK**
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Elisabeth A. Shumaker
Clerk of Court

December 26, 2007

Douglas E. Cressler
Chief Deputy Clerk

Mr. Douglas B. Allen
Oklahoma Tax Commission
P.O. Box 53248
Oklahoma City, OK 73152-3248

Ms. LaRonna Williams Harris
Office of the Attorney General
State of Oklahoma
2300 North Lincoln Blvd., Suite 112
Oklahoma City, OK 73105-4894

Mr. Sean Robert McFarland
Oklahoma Tax Commission
P.O. Box 53248
Oklahoma City, OK 73152-3248

Mr. Stephen R. Ward
Conner & Winters
One Williams Center, Suite 4000
Tulsa, OK 74172-0148

Ms. Amber L. Willingham
Oklahoma Tax Commission
P.O. Box 53248
Oklahoma City, OK 73152-3248

**RE:     03-5162, Osage Nation v. State of OK, ex rel, et al**
          Dist/Ag docket: CV-01-516-P

Dear Counsel:

Enclosed is a copy of the order and judgment.

Please contact this office if you have questions.

Sincerely,

Elisabeth A. Shumaker
Clerk of the Court


cc:     Gary S. Pitchlynn
        Olin Joseph Williams