**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| OSAGE NATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 01-CV-0516-JHP-FHM |
| vs. ) | |
| ) | |
| THOMAS E. KEMP, JR., Chairman of ) | |
| the Oklahoma Tax Commission; JERRY ) | |
| JOHNSON, Vice-Chairman of the ) | |
| Oklahoma Tax Commission; and ) | |
| CONSTANCE IRBY, Secretary-Member ) | |
| of the Oklahoma Tax Commission, ) | |
| ) | |
| Defendants. ) | |

**REPLY IN SUPPORT OF PLAINTIFF OSAGE NATION'S RULE 59 MOTION**

COMES NOW Plaintiff Osage Nation (the "Nation") and respectfully submits this reply in support of the Nation's Rule 59 Motion and Opening Brief (the "Rule 59 Motion") [Docket No. 115]. In the response filed by Defendants' Kemp, Johnson, and Irby to the Nation's Rule 59 Motion (the "Response") [Docket. No. 120], Defendants fail to adequately address issues of misapplication of applicable law, misapplication of the Nation's position, and clear error raised by the Nation's Rule 59 motion. The Nation advises the Court as follows:

**ARGUMENT AND AUTHORITIES**

**I. CONTRARY TO DEFENDANTS' ASSERTIONS, PLAINTIFF DOES NOT DISPUTE THIS COURT'S *POWER* TO RENDER SUMMARY JUDGMENT PRIOR TO DISCOVERY, BUT RATHER THE *APPROPRIATENESS* OF THE COURT RENDERING SUMMARY JUDGMENT FOR DEFENDANT BASED UPON AN INCOMPLETE RECORD**

Adequate discovery is favored before summary judgment is granted. *Bryant v. O'Connor*, 848 F.2d 1064, 1068 (10th Cir. 1988). District courts have broad discretion to manage their dockets,

1

and local procedural rules serve as important tools for case management. *Deere & Co., v. Ohio Gear*, 462 F.3d 701, 706-07 (7th Cir. 2006). However, a court must also consider the motion practice history in the case, and may not grant summary judgment as a bypass for avoiding pending discovery motions. *Id.* at 707. In its response in opposition to Defendants' summary judgment brief [Docket No. 80] and subsequent motion to strike certain exhibits to Defendants' summary judgment brief [Docket No. 86], the Nation raised a number of challenges and disputes not only to Defendants' statement of facts, but exhibits which included conclusory statements by historians as to the ultimate legal issue in this case. The disputed statements and exhibits included copies of historical texts by Francis Paul Prucha and B.B. Chapman: Those exhibits were specifically referenced by the Court's Order as a basis for its findings as to historical context of the 1906 Osage Allotment Act. Order at 14 [Docket No. 113]. Given that the Court did not rule upon the Nation's motion to strike documents submitted with the Defendants' motion for summary judgment [Docket No. 112] until *immediately before* it issued its order granting the motion for summary judgment, the parties had no way of knowing which facts comprised the "undisputed record" that would form the basis of decision on summary judgment.

In *Am. Bank & Trust Co., v. Bond Int'l Ltd.,* this Court stated that although the nonmoving party should have moved for leave of court to obtain additional discovery before responding to the movant's motion for summary judgment, the Court would exercise its discretion to consider the evidence submitted with a Motion for Reconsideration. This evidence considered by the Court on Motion for Reconsideration included deposition testimony that had not been acquired until *after* the summary judgment briefing cycle because the summary judgment motion was filed "relatively early in the litigation." 2007 U.S. Dist. LEXIS 4167, *8-9 (attached as Exhibit A).

Similarly, in this case, the Defendants' initial Motion for Summary Judgment was filed on May 30, 2008, nearly eight months before the Court's decision on January 23, 2009. Taking into account the particular circumstances of a case, a summary judgment ruling prior to ruling on pending discovery motions can be considered premature on appeal, and therefore considered an abuse of discretion. *See Deere & Co.*, 462 F.3d at 707 (Based upon history of motions practice in the case, court abused its discretion by granting summary judgment motion on the basis of procedural default). Consequently, the Nation urges the Court to reject Defendants' arguments that an affidavit under Fed. R. Civ. Pro. 56(f) is a necessary requirement to reconsider and vacate its Order as premature. The Nation further renews its request to allow rebriefing of the issues based upon a fully developed record.

## II. DEFENDANTS' RESPONSE DOES NOT EXPLAIN THE COURT'S FAILURE TO ADDRESS AND ACCOUNT FOR APPLICABLE CANONS OF CONSTRUCTION IN IT'S STATUTORY INTERPRETATION.

In their Response, Defendants assert that the Court properly applied facts introduced on the record up to that point to the Supreme Court's analytical structure governing reservation disestablishment analysis. Yet, Defendants' do not address the effect of the Court's failure to consider the proper statutory construction in applying that analysis.

In making its determination in Part IV of its analysis that the Osage Reservation does not remain intact, the Court relies primarily upon the plain text of the Osage Allotment Act to reach this conclusion. Yet previous reservation disestablishment cases have established canons of construction favoring resolution of statutory ambiguity in favor of Indians and tribes. *Hagen v. Utah*, 510 U.S. 399, 411 (1994). The Supreme Court has been clear that courts **will not lightly find** diminishment. *Id.* Furthermore, "[s]tatutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit." *Id.* Although Defendants, in

3

Part III.B of their Response, offer the conclusory argument that the Nation's Rule 59 Motion "…largely rehashes the same unpersuasive statutory interpretation arguments that it advanced during summary judgment briefing," Defendants do not attempt to reconcile this Court's misapprehension of applicable law governing canons of construction with the statutory language used in the Osage Allotment Act in 1906 or any other applicable legislation.

### III. ADDITIONAL EXHIBITS SUBMITTED WITH THE NATION'S RULE 56 MOTION ARE BOTH RELEVANT AND NECESSARY TO DEMONSTRATE THE COURT'S CLEAR ERROR AND MISAPPREHENSION OF THE FACTS, MISAPPREHENSION OF THE NATION'S POSITION AND APPLICATION OF THE GOVERNING LAW.

**A. Contrary to Defendants' Assertions in its Response Brief, Additional Exhibits are Necessary and Relevant to Demonstrate that the Court Misapprehended the Facts on the Record to interpret the "Historical Context" in which the 1906 Acts were passed.**

The Nation's Rule 59 Motion does not, as Defendants state in their Response, "ignore the historical context leading to passage of the relevant acts and events immediately following adoption of those acts." Rather the Nation's Motion disputes Defendants' attempts to "cherry pick" historical facts and census data (and, for that matter, deposition testimony gathered subsequent to the briefing cycle for the Motion for Summary Judgment) to support its position.

In their Response, Defendants state that Nation failed to dispute context of the facts entered as to, *inter alia* (1) "dramatic" population changes in demographics; (2) jurisdictional history of the treatment of the area. Implicit in Defendants' argument is their specious assertion that uncontroverted facts entered into the record thus far demonstrate a *complete* historical context sufficient to resolve ambiguities in the legislative acts as to disestablishment.

In fact, the Nation disputed specific facts proffered by the Defendants in its Summary Judgment Brief. *See* Plaintiff's Statement of Undisputed Facts, [Docket No. 80] ¶¶ 1-3. As

4

noted *supra*, the Nation filed a motion to strike affidavits [Docket No. 86] which included the Affidavit of Warren Glimpse, the Defendants' witness expected to testify as to the "dramatic population changes." Although Defendants proffer Bailey's deposition testimony to support their defense of disestablishment, Defendant do not include testimony obtained during that same deposition in which Bailey explained that the population changes in census data subsequent to allotment were attributable in part to "reidentification" and self reporting of Indians as white to whitespread murder and abuse of Osage Indians, along with an increase non-Indian populations due to oil exploration and development of the Osage mineral reservation in Osage County.   See Bailey Depo., 229-239, Attached as Exhibit "B."

Nowhere in the Response do Defendants attempt the defend the Court's misplaced reliance upon  language in *Murphy v. Sirmons*, stating "…there is no question, *based on the history of the Creek Nation,* that Indian reservations do not exist in Oklahoma." 497 F. Supp. 2d 1257, 1289-90 (E.D. Okla. 2007). Defendants cannot reconcile how provisions of law affecting the *Creek* tribe[1] (which, per §4 of the Dawes Act, specifically provided for allotment only to Indians "…not residing upon a reservation, or for whose tribe no reservation has been provided by treaty, act of Congress or executive order") provide a "historical context" in which to interpret that Congress intended the Osage Allotment Act to disestablish the *Osage* Reservation. Nor can Defendants explain why Congress chose to remain silent on the existence of the Osage reservation status

---

[1] In fact, §8 of the Dawes Act (Act of February 8, 1887,  24 Stat. 388) specifically exempts the Osage from its provisions along with the Sac & Fox, Miami, Peoria and Cherokee, Creek, Choctaw, Chickasaw and Seminole  (the "Five Oklahoma Tribes"). The provisions of the Dawes Act were later extended *only as to the Five Oklahoma Tribes* through the Curtis Act (Act of June 28, 1898, 30 Stat. 495).

when Congress expressly demonstrated its awareness of the effect of allotment on reservations in the Dawes Act of 1887.

IV. **CONTRARY TO DEFENDANTS' RESPONSE, THE NATION'S MOTION DEMONSTRATES THAT THE COURT'S ORDER MISAPPREHENDS THE ANALYSIS OF THE CONTROLLING LAW REGARDING TAXATION OF INDIVIDUAL MEMBERS OF INDIAN TRIBES.**

**A. The Defendants' Response Fails to Contradict the Nation's Argument that the Court's Analysis of the Effect of 18 U.S.C. § 1151 Demonstrates Clear Error and Misapplication of Applicable Law Warranting Reconsideration**

The Court's Order states that Plaintiff's Complaint "…seeks to support its claim by contending that a federal criminal statute, 18 U.S.C. § 1151, forecloses state taxation of all income earned within "Indian country." Order at 7. Defendants cannot defend this interpretation of the Plaintiff's position. Section 1151(a)-(c) is a definitional statute; Plaintiff has never asserted that 18 U.S.C. § 1151 is a standalone, independent basis for a tribal member's exemption from income tax. Rather, the three subparts of this statute serve to define what constitutes "Indian country" for purpose of determining jurisdictional boundaries in both civil and criminal contexts. *See* Felix Cohen, HANDBOOK OF FEDERAL INDIAN LAW 188-96 (Nell Jessup Newton et al. eds., 2005). Proper application of the applicable law necessitates a distinction between which of these three subparts is applicable to the analysis. Defendants' Response also does not adequately distinguish controlling federal caselaw stating that Congress intended the Indian country definition to be broadly construed to include formal or *informal* reservation lands, dependent Indian communities, and Indian allotments whether restricted or held in trust by the United States. *Okla. Tax Comm'n v. Sac & Fox Nation*, 508 U.S. 114, 123 (1993).

**B. The Defendants' Response Fails to Contradict the Nation's Argument that the Court's Refusal to Acknowledge the Application of a Categorical Bar Against State**

6

**Taxation of Tribes and Tribal Members is a Clear Misapprehension of the Facts and Plaintiff's Position Warranting Reconsideration.**

Contrary to Part IV of Defendants' Response, the Nation does not mischaracterize the Court's holding; rather, the Nation's Rule 59 motion sought to clarify the failure to distinguish the complexity of taxation of Osage *property* with taxation of Osage members' *income*. Taxation of Osage property is complex. Felix Cohen, HANDBOOK OF FEDERAL INDIAN LAW 318-19 (Nell Jessup Newton et al. eds., 2005). However, taxation of the income of Osage members hinges on the Supreme Court's categorical prohibition against state taxation of tribes and tribal members within Indian country as defined by 18 U.S.C. §1151(a)-(c); this prohibition applies not only to state taxes levied upon the net income of tribal members, but, *inter alia*, motor fuels, motor vehicles, personal property taxes, real property taxes on restricted land, and cigarette taxes. Felix Cohen, HANDBOOK OF FEDERAL INDIAN LAW 693 (Nell Jessup Newton et al. eds., 2005). Thus, contrary to Part V of the Court's opinion, a preemption analysis does not come into play when a state attempts to directly tax the **income** a tribe or tribal members **inside of Indian country**. *Id.* Because Plaintiff's request for relief hinges on the definition of Indian country, Plaintiff was not required to plead any factors supporting "preemption of Oklahoma's legitimate taxing interest" as such factors do not apply to this analysis.

**C. Additional Evidence and Exhibits are Relevant to Demonstrate the Court's Clear Error in Issuing a Ruling for Defendants on Unpled Equitable Affirmative Defenses without Pleadings or Facts on the Record to Support these Defenses.**

In their Response, Defendants assert that the exhibits accompanying the Nation's Rule 59(e) are both time barred and irrelevant. As Defendants cited no facts or evidence in its summary judgment pleadings to sufficiently establish the necessary elements of laches or any other affirmative defense, it is difficult to determine exactly when the Nation should have been

7

expected to proffer evidence anticipating this unpled defense, especially considering Defendants' objections to the Court requiring Defendants to file and Answer prior to discovery. *See* Defs Resp. in Opp. to Pls' Motion to Continue Trial [Docket No. 109] at 2.  Nor does Defendants' Response account for which federal law clearly states that a court should not make factual findings when addressing a summary judgment motion based on laches. *Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 949 (10th Cir.  2002). (internal citations omitted.)   Among other findings, the Court's Order found that a declaration of Osage County as a reservation would prevent the State from collecting income taxes on Osage members who live and work within Osage County in an amount that would be enough to "severely threaten" the State's provision of services.  No figures of this loss were ever submitted by Defendants for the record.  Thus, the Nation's exhibits are relevant in contradicting not only this unsupported finding of fact, but a grant of summary judgment on the basis of laches, "justifiable reliance" or any other unpled affirmative defenses.

In Part III.E of its Response, to support its argument that "state, not Tribal or federal, authorities exercised jurisdiction over Osage County in a manner consistent with the understanding that the Osage reservation was disestablished," Defendants offer portions of deposition testimony from the discovery record.  This further demonstrates the value that additional discovery could have provided both parties in proving their case.  For example, deposition testimony from Robert Wilson, one of Defendants' witnesses, that was obtained on the day of the Court's ruling on Defendants' Motion for Summary Judgment not only controverts Defendants' assertions that the federal authorities did not exercise jurisdiction over the tribe in Osage County, but also supports a finding that the Nation's delay in asserting its claim was not unreasonable,  Deposition of Robert Wilson at 51-54: (attached as Exhibit "C").

8

## **CONCLUSION**

For the foregoing reasons, Plaintiff requests the Court to reject Defendants' arguments in support of denial of Defendants' Rule 59 Motion. Plaintiff respectfully renews its request under Fed. R. Civ. Pro. 59(e) for the Court to reconsider the Order granting Defendants' Motion for Summary Judgment, or in the alternative, vacate the Order to allow parties to rebrief the legal issues based upon a complete record developed after completion of discovery.

Dated this 10th day of March, 2009.

Respectfully submitted,

*/s/ Stephanie Moser Goins*
_____
Gary S. Pitchlynn, OBA #7180
O. Joseph Williams, OBA # 19256
Stephanie Moser Goins, OBA #22242
PITCHLYNN & WILLIAMS, PLLC
124 East Main Street
P.O. Box 427
Norman, Oklahoma 73070
Telephone: (405) 360-9600
Facsimile: (405) 447-4219
Email: gspitchlynn@pitchlynnlaw.com
          jwilliams@pitchlynnlaw.com
          smgoins@pitchlynnlaw.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of March, 2009, a true and complete copy of the within and foregoing **REPLY IN SUPPORT OF PLAINTIFF OSAGE NATION'S RULE 59 MOTION** was electronically transmitted to the Clerk of Court using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

| | |
|---|---|
| Douglas B. Allen<br>Guy Hurst<br>OKLAHOMA TAX COMMISSION<br>120 N. Robinson Avenue, Suite 2000W<br>Oklahoma City, Oklahoma 73102<br>*Attorneys for Defendants* | Lynn H. Slade<br>William C. Scott<br>Modrall, Sperling, Roehl, Harris & Sisk, P.A.<br>500 Fourth Street, NW, Suite 1000<br>Albuquerque, NM 87102<br>*Attorneys for Defendants* |

*/s/ Stephanie Moser Goins*
_____
STEPHANIE MOSER GOINS